**CALIFORNIA CONSUMER ATTORNEYS, P.C.**
Michael H. Rosenstein (SBN 169091)
mhr@calattorneys.com
Sepehr Daghighian (SBN 239349)
sd@calattorneys.com
Brian T. Shippen-Murray (SBN 288188)
btm@calattorneys.com
10866 Wilshire Boulevard, Suite 1200
Los Angeles, California 90024
Telephone: (310) 872-2600
Facsimile: (310) 730-7377
Attorneys for Plaintiff,
KEVIN BODEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BODEN, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:  8:21-cv-00973-CJC-DFM<br>Judge:      Hon. Cormac J. Carney<br><br>**PLAINTIFF KEVIN BODEN'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Declaration of Sepehr Daghighian and [Proposed] Order]<br><br>Date:  April 18, 2022<br>Time: 1:30 p.m.<br>Dept.: 9 B |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 18, 2022 at 1:30 p.m. in Courtroom 9 B of the Ronald Reagan Federal Building, located at 411 West Fourth Street, Santa Ana, California 92701, Plaintiff Kevin Boden ("Plaintiff") will, and hereby does, move this Court for an award of attorney's fees and costs and expenses pursuant to Civil Code § 1794(d) of the Song-Beverly Consumer Warranty Act. Plaintiff moves this Court as the prevailing party pursuant to the terms of the settlement agreement reached between the parties on or about December 22, 2021.

Plaintiff now moves for an order awarding attorney's fees under the "lodestar" method in the amount of $25,867.50 for the legal services provided by California Consumer Attorneys, P.C. (hereinafter "CCA"). Plaintiff also requests a modest "lodestar" enhancement of 0.5x, in the amount of $12,933.75, for a total fee award of $38,801.25.  Plaintiff further moves this Court for reimbursement of verifiable costs and expenses in the amount of $525.55.  The total amount requested by this motion is $39,326.80.

This motion is based upon the memorandum of points and authorities filed concurrently herewith, upon the declarations filed concurrently herewith, upon such evidence, oral and documentary, that may be presented at the hearing, and upon the entire record of the case.

Dated: <u>March 18, 2022</u>                         **CALIFORNIA CONSUMER**
                                                **ATTORNEYS, P.C.**


                              By: <u>/s/ Sepehr Daghighian</u>

                                  Michael H. Rosenstein, Esq.
                                  Sepehr Daghighian, Esq.
                                  Brian T. Shippen-Murray, Esq.
                                  Attorneys for Plaintiff,
                                  KEVIN BODEN

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# **TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ......................................................................1

II. STATEMENT OF FACTS .........................................................2

    A.    The Underlying Facts of the Case ...................................2

    B.    Litigation History and Settlement Attempts ...................3

III. ARGUMENT AND ANALYSIS ...............................................4

    A.    Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action .......................................................4

    B.    The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable ....................................................................5

    C.    The Nature and Complexity of the Litigation Support the Attorney's Fees Requested ...........................................8

    D.    The Firm's Skill Justifies the Amount of Attorney's Fees Sought ...........................................................................8

    E.    The Settlement Amount Does Not Limit the Attorney's Fee Recovery .........................................................................9

    F.    Plaintiff Should Be Granted a Lodestar Multiplier ...................... 11

        1.    The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ....... 12

    G.    Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action ................... 13

IV. CONCLUSION ................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Cazares v. Saenz*
    (1989) 208 Cal.App.3d 279 ............................................................. 11

*City of Riverside v. Rivera*
    (1986) 477 U.S. 561............................................................................. 10

*Dietrich v. Dietrich*
    (1953) 41 Cal.2d 497 ............................................................................8

*Goglin v. BMW of North America, LLC*
    (2016) 4 Cal.App.5th 462 ........................................................... 6, 10

*Graciano v. Robinson Ford Sales*
    (2006) 144 Cal.App.4th 140 ...................................................... *passim*

*Graham v. DaimlerChrysler Corp.*
    (2004) 34 Cal.4th 553 ................................................................ 11, 16

*Harman v. City and County of San Francisco*
    (2007) 158 Cal.App.4th 407 ............................................................ 10

*Horsford v. Bd. of Trustees of Cal. State Univ.*
    (2005) 132 Cal. App. 4th 359 ....................................................... 7, 12

*In re Chiron Corp. Securities Litigation*
    (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ........ 11

*Independent Federation of Flight Attendants v. Zipes*
    (1989) 491 U.S. 754............................................................................ 10

*Jensen v. BMW of North America, Inc.*
    (1995) 35 Cal.App.4th 112 ......................................................... 14, 15

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122 ............................................................... 12, 13

*La Mesa-Spring Valley School Dist. v. Otsuka*
    (1962) 57 Cal.2d 309 ...........................................................................8

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

*Los Angeles Police Protective League v. City of Los Angeles*
    (1986) 188 Cal.App.3d 1 ...................................................................7

*Mandel v. Lackner*
    (1979) 92 Cal.App.3d 747 .......................................................... 5, 16

*PLCM Group v. Drexler*
    (2000) 22 Cal.4th 1084............................................................. 11

*Reveles v. Toyota by the Bay*
    (1997) 57 Cal.App.4th 1139.................................................... 4, 16

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
    (2006) 144 Cal.App.4th 785 .............................................. *passim*

*Serrano v. Unruh*
    (1982) 32 Cal.3d 621 ............................................................ 7, 16

*Serrano v. Priest*
    (1977) 20 Cal.3d 25 (*Serrano III*) ..................................... 11

*Vo v. Las Virgenes Municipal Water District*
    (2000) 79 Cal.App.4th 440 ..................................................... 10

## Statutes and Codes

California Code of Civil Procedure
    Section 1032(a)(4) ...................................................... 4, 16

California Code of Civil Procedure
    Section 1033.5.................................................................. 14

California Code of Civil Procedure
    Section 1794(d)....................................................... *passim*

California Code of Civil Procedure
    Section 998............................................................... *passim*

United States Code
Title 42 § 1988 ............................................................... 10

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## Other Authorities

Pearl, *California Attorney Fee Awards*

    Sections 12.14A, 12.33 (2nd Ed. 2005) ...................................................... 5, 16

Sen. Report No. 93-151,

    1st Sess., pp. 23 (1973) ................................................................................. 10

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

This action was brought by the purchaser of an automobile against the automobile's manufacturer for breach of warranty under the Song-Berly Consumer Warranty Act (the "Song-Berly Act").  Through this action, plaintiff Kevin Boden ("Plaintiff") alleged that the 2018 Ford F150 (the "Subject Vehicle") was defective, and that defendant Ford Motor Company ("Defendant") was unable to conform the Subject Vehicle to its written warranty within a reasonable number of repair attempts.  On or about December 22, 2021, the parties settled the underlying claims for $66,496.01.  The only issue that remains unresolved is the award of Plaintiff's attorneys' fees and costs.

Between January 18, 2022 and February 8, 2022, Plaintiff's counsel attempted to negotiate a settlement of attorneys' fees and costs in an attempt to avoid this motion. Unfortunately, the Parties were not able to reach an agreement. Accordingly, Plaintiff brings this motion in compliance with Local Rule 54-5.

The Song-Berly Act expressly provides that a prevailing consumer shall be allowed to recover attorneys' fees and costs determined by the court to have been reasonably incurred in the commencement and prosecution of the action.  As such, Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $25,867.50; (2) for a modest, "lodestar" modifier of 0.5x under California law, in the amount of $12,933.75; and (3) an award of actual costs and expenses incurred in the amount of $525.55. (Civ. Code § 1794(d).) Plaintiff requests a total of $39,326.80 in attorney's fees, costs and expenses. (Declaration of Sepehr Daghighian ("SD Dec." ¶ 9; **<u>EXHIBIT A</u>**.)

///

///

///

## II.   STATEMENT OF FACTS

### A.   <u>The Underlying Facts of the Case</u>

On April 12. 2018, Plaintiff purchased a new 2018 Ford F-150 Raptor (the "Subject Vehicle").  (SD Dec., ¶ 12.)  The Subject Vehicle was purchase with 40 miles on the odometer.  (*Id*.)  The Total Sales Price of the Subject Vehicle was $78,046.26.  (*Id*.)

The Subject Vehicle was manufactured and warranted by Defendant. (SD Dec., ¶ 14.)  The Subject Vehicle exhibited serious nonconformities to warranty. (*Id*.)  On July 16, 2019, at 23,211 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized dealership because the Subject Vehicle was jerking.  (SD Dec., ¶ 15.)  The dealership verified Plaintiff's concern and performed a software update. (*Id*.)  All repairs were performed under Defendant's written warranty. (*Id*.)

On April 8, 2020, at 38,832 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized dealership because there was a harsh shift and the engine was leaking oil.  (SD Dec., ¶ 16.)  The dealership verified Plaintiff's concern, rebuilt the transmission and resealed the engine.  (*Id*.)  All repairs were performed under Defendant's written warranty.  (*Id*.)

On April 8, 2020, at 38,832 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized dealership because there was a harsh shift and the engine was leaking oil.  (SD Dec., ¶ 17.)  The dealership verified Plaintiff's concern, rebuilt the transmission and resealed the engine.  (*Id*.)  All repairs were performed under Defendant's written warranty.  (*Id*.)

On January 26, 2021, at 56,023 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized dealership because the transmission was slipping and the engine was still leaking oil.  (SD Dec., ¶ 18.)  The dealership verified Plaintiff's concern, repaired the transmission and installed a new oil pan in the engine.  (*Id*.) All repairs were performed under Defendant's written warranty.  (*Id*.)

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

On February 5, 2021, at 56,251 miles, Plaintiff presented the Subject Vehicle to Defendant's authorized dealership because there was a harsh shift and the engine was misfiring.  (SD Dec., ¶ 19.)   The dealership verified Plaintiff's concern, updated software and replaced the fuel injector.  (*Id.*)  All repairs were performed under Defendant's written warranty.  (*Id.*)

On or about February 5, 2021, Plaintiff contacted California Consumer Attorneys ("CCA") seeking advice in understanding his rights under the Song-Beverly Act.  (SD Dec., ¶ 20.)  In February 2021, CCA reviewed the Subject Vehicle's repair history, analyzed Plaintiff's claims, and agreed to represent Plaintiff on a fully contingent basis. (*Id.*) In taking on this representation, CCA agreed to advance likely thousands of dollars in litigation costs and commit an unknown number of hours of attorney services. (*Id.*) CCA assumed the genuine risk that it would not recoup its attorneys' fees and costs for several years, if at all. (*Id.*)

On or about February 27, 2021, Plaintiff contacted Defendant and requested that Defendant repurchase or replace the Subject Vehicle.  (SD Dec., ¶ 21.) Defendant did not agree to repurchase or replace the Subject Vehicle.  (*Id.*)   As such, Plaintiff was forced to initiate this action.  (*Id.*)

### B.   <u>Litigation History and Settlement Attempts</u>

On April 22, 2021, Plaintiff initiate this action in the Superior Court of California for the County of Orange.  (SD Dec., ¶ 22.)   In May 2021, CCA immediately began discussing settlement with Defendant's counsel, but could not come to an immediate resolution.  (*Id.*)   Ultimately, on May 29, 2021, CCA received Defendant's Answer to the Complaint and Notice of Removal to Federal Court.  (*Id.*)  CCA analyzed the case to see whether remand was advisable.  (*Id.*)

In June, CCA began preparing for the Rule 26 Conference and corresponding report.  (SD Dec., ¶ 23.)  In June, CCA drafted the initial version of the Rule 26 Conference Report.  (*Id.*)  In June, CCA audited and analyzed documents from

Plaintiff and prepared Plaintiff's initial disclosures and associated document production. (*Id.*) On August 10, 2021, CCA served Plaintiff's initial disclosures and associated document production. (*Id.*)

In September 2021, CCA began preparing to schedule and attend mediation. (SD Dec., ¶ 24.) Settlement negotiations continued from September 2021 through December 2021. (*Id.*) Ultimately, in December 2021, the parties were able to resolve Plaintiff's underlying claims. (*Id.*) On December 22, 2021, Plaintiff executed a Settlement and Release Agreement whereby Plaintiff would receive $66,496.01 with a surrender of the Subject Vehicle and attorneys' fees and costs to be "resolved either by way of negotiation or a noticed motion to be filed in the Action." (*Id.*)

On January 18, 2022, CCA made a formal demand to resolve Plaintiff's attorneys' fees and costs for $22,260.55 in compliance with Local Rule 54-5. (SD Dec., ¶ 25; **EXHIBIT C**.) Despite several requests from CCA, Defendant's counsel never made an offer to resolve Plaintiff's attorneys' fees and costs. (*Id.*) After several attempts to negotiate Plaintiff's attorneys' fees and costs Plaintiff was forced to file this motion to seek judicial intervention. (*Id.*)

## III.   ARGUMENT AND ANALYSIS

### A.   <u>Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action</u>

Plaintiff is the prevailing party and is therefore entitled under the Song-Beverly Act to recoup all reasonable attorney's fees, costs and expenses. (Code Civ. Proc. § 1032(a)(4); Civ. Code, § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances"

that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of CCA amount to $25,867.50, including drafting this motion and time anticipated to be spent preparing the reply and attending the hearing. (SD Dec., ¶ 9; **EXHIBIT A**.)  Plaintiff's counsel also requests a modest 0.5x enhancement in the amount of $12,933.75 to account for the exceptional result achieve, delay in payment and contingent risk posed by this case.  Lastly, the reimbursable costs and expenses set forth in Plaintiff's billing invoice are $525.55.  (**EXHIBIT A**.)  In total, Plaintiff requests $39,326.80 in attorneys' fees, costs and expenses.

### B.     The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable

In evaluating fee motions in diversity cases based on the Song-Beverly Act, a Federal District Court should apply California State law. *Hall v. FCA US LLC* (E.D. Cal. May 21, 2018, No. 1:16-cv-0684 - JLT) 2018 U.S. Dist. LEXIS 85048, at *6-8; *Gordillo v. Ford Motor Co.* (E.D. 2014) 2014 U.S. Dist. LEXIS 84359, at *3-4. The procedure for requesting an award of attorneys' fees is governed by federal law. *Hall, supra*, 2018 U.S.Dist.LEXIS 85048, at *6.

California courts of appeal and district courts have both expressly held that the lodestar method applies to determining attorney fees under the Song-Beverly Act.  (*Hall, supra*, at *6; *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.)  The calculation of reasonable attorney's fees under the Song-Beverly Act is based on the lodestar method, which entails multiplying the number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.)  The prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably necessary to the conduct of

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

the litigation," and "reasonable in amount." (*Goglin v. BMW of North America, LLC* (2016) 4 Cal. App. 5th 462, 470.) In making such an evaluation, a court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id.*)

In *Goglin v. BMW*, the appellate court affirmed the trial court's award of over $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under the Song-Beverly Act. (*Id.* at 464.) The court also found $575 per hour rate of plaintiff's counsel was reasonable as supported by exhibits to counsel's declaration indicating various state and federal courts had previously awarded him comparable hourly rates. (*Id.* at 473-74.) The holding states that the trial court was not obliged to consider that the defendants paid their counsel a much lower hourly rate. (*Id.* at 474.)

In *Robertson*, the court observed a prevailing buyer is entitled to an award of reasonable attorney's fees for time reasonably expended by his attorney. (*Robertson*, *supra*, 144 Cal.App.4th at 817.) The court ruled the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (*Id.* at 819.) Indeed, in *Robertson*, the trial court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion. (*Id.* at 817.) The appellate court upheld the trial court's ruling. (*Id.* at 822.)

In *Graciano*, the appellate court reversed the trial court's decision to reduce the plaintiff's attorney's hourly rate and held that the prevailing rate in the community should determine the prevailing attorney's hourly rate. The trial court initially rejected plaintiff's lodestar fees of $109,468.50 and request for a multiplier of 2.0. In particular, the trial court reduced the plaintiff's attorney's rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony. The appellate court reversed, reasoning a court should

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

determine the prevailing rate in the community for comparable professional legal services. (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).) The court found the plaintiff's unrebutted declarations established the proper hourly rate at $350 (for work in 2004) and reducing that rate to $250 was an abuse of discretion. (*Id.*) The court also reaffirmed attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.) On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for total fee award of over $380,000.

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are also entitled to recover their fees for the time spent preparing fee applications and motions. (*Serrano v. Unruh*, *supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

Additionally, the hourly rates should be considered in the context of the rates charged by Plaintiffs' attorneys in the metropolitan community in which they practice, ***not*** where the cased is venued. In *Horsford v. Bd. of Trustees of Cal. State Univ.,* the Court of Appeal reversed the trial court's refusal to award the higher of the two rates to San Francisco-based attorneys who litigated a FEHA case in Fresno. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.) The law "requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause. (*Id.*) In the absence of any realistic indication plaintiffs could find local counsel, it is an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." (*Id.*) Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit.

Ultimately, due consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth of in the declarations filed concurrently herewith (SD Dec., ¶¶ 4 – 9); (ii) the numerous court orders

confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SD Dec., ¶¶ 11(a) – (j)); and (iii) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶ 10; **EXHIBIT B**.)  Moreover, Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

## C. <u>The Nature and Complexity of the Litigation Support the Attorney's Fees Requested</u>

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case.  (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.)  Defendant will likely claim that "this is a simple lemon law case," and therefore, Plaintiff's fee request is unjustified. However, this case required a range of specialized knowledge: (1) an understanding of the full scope of consumer protection laws, which as this Court is aware, are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as how to investigate technical issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations.  (SD Dec., ¶ 26.) Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Plaintiff's recovery here. (*Id.*)

## D. <u>The Firm's Skill Justifies the Amount of Attorney's Fees Sought</u>

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees.  (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.)  Despite the case's difficulties, Plaintiff ultimately recovered a substantial settlement, which Defendant refused to provide without Plaintiff's counsel holding Defendant's foot to the proverbial fire by filing suit. The vehicle was no more or less defective on the date of settlement agreement than it was when Plaintiff contacted Defendant to request a repurchase before

pursuing this legal action. Therefore, there is no rational explanation why Defendant needed to conduct a lengthy costly legal battle to maintain its position.

Plaintiff's attorneys specialize in consumer law and were well-equipped to handle Defendant's aggressive litigation tactics. To that end, Plaintiff's attorneys' experience has enabled them to develop litigation strategies that are highly effective and cost and time efficient. (SD Dec., ¶ 27.) Plaintiff's attorneys' specialized knowledge and experience in lemon law frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law. (*Id.*) This experience provided a resolution to this matter far beyond that which Defendant was willing to entertain. (*Id.*) Because of this experience, knowledge, and expertise, Plaintiff recovered a substantial settlement, over Defendant's vigorous defense. (*Id.*)

Counsels' skill is evidenced by the size of Plaintiff's recovery as well as the nominal time expended on litigation tasks, which results in lower overall billing. (*Id.*) In fact, Plaintiff's attorneys do not spend an inordinate amount of time researching because they specialize in this area of law. (*Id.*) Nor do they spend unreasonable time preparing pleadings, as their case documents have been regularly revised over the years and merely need to be edited, rather than drafted from scratch. (*Id.*) While substantial fees have been incurred, those fees led to the execution of effective strategies that resulted in concrete results for Plaintiff.

### E.   The Settlement Amount Does Not Limit the Attorney's Fee Recovery

Defendant may argue that damages in the amount of $66,496.01, do not justify the fee award requested by Plaintiff.  However, such a position is starkly against the weight of California law because the amount of attorney's fees must not be tied to any percentage of recovery.  (*See Graciano, supra,* 144 Cal. App. 4th at 164.)  In fact, a trial court may abuse its discretion if it applies a rule of proportionality to a fee award, as the U.S. Supreme Court previously considered

this issue and held: "[w]e reject the proposition that fee awards under [42 U.S.C.] section 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." (*City of Riverside v. Rivera* (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973) (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a percentage of the recovery); *Robertson*, *supra,* 144 Cal. App. 4th at 820; *Independent Federation of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under Magnuson-Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69 (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal. App. 4th 440, 446 (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007) 158 Cal. App. 4th 407 (affirming award of approximately $1.1 million in fees where plaintiffs recovered $30,300).

Lastly, while it is not uncommon for attorney's fees and costs to exceed the client's damages, here, Plaintiff's attorneys' fees are substantially *less* than his recovery. In any event, the Legislature acknowledged that substantial work might be needed to prosecute such claims against large corporations, which is the primary reason behind the fee shifting provision of the Song-Beverly Act. "The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights." (*Ketchum v. Moses* (2001) *supra,* 24 Cal.4th at 1132.)   As such, the Song-Beverly Act gives consumers the opportunity to seek legal redress even if their damages would not be high enough to warrant legal representation. Thus, the award of attorney's fees *cannot* be limited by the damages recovered by Plaintiff, and any argument by Defendant to the contrary would be disingenuous because the law is clear on this point: whether the

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

fees incurred are small or large, they may not be tied to Plaintiff's settlement. (*Graciano, supra,* 144 Cal.App.4th at 164.)

### F.    Plaintiff Should Be Granted a Lodestar Multiplier

As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier, sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144 Cal.App.4th at 817.)  Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Robertson, supra,* 144 Cal.App.4th at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III)*)), the amount may then be augmented by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.  (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at 1096.)   "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).)   "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on."  (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers."  (144 Cal. App. 4th at 819.)   The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus

a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fee motion. (*Id*. at 817.) The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion. (*Id*. at 822.) In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000. (144 Cal.App.4th at 156.) The court further reaffirmed that attorney's fees are not limited to a proportion of the recovery. (*Id*. at 164.)

While Defendant may argue a multiplier is not permitted, and cite to *Ketchum* in support, that case actually confirms the granting of a multiplier in contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.) Not only is a lodestar multiplier available, but it has been awarded to Plaintiff's counsel in numerous cases. (SD Dec., ¶¶ 11.)

### 1.   *The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment*

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved. The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the <u>risk</u> of taking a case on a contingency basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable." (24 Cal.4th at 1132 [emphasis added].) It further noted that:

A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.) A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the possibility Plaintiff would not ultimately prevail. This risk was compounded by the fact that Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement. Thus, if Plaintiff did not prevail, his attorneys would have suffered a loss of numerous hours in uncompensated work and thousands of dollars in out-of-pocket expenses. Plaintiff requests a 0.2 enhancement based on that risk.

Further, Defendant prolonged this case for over a year after the complaint was filed, through a Mandatory Settlement Conference and to just a few short months before trial. Unlike Defendant's attorneys, who are paid monthly regardless of outcome, Plaintiff's counsel is not paid at all if he loses, and need to absorb significant delay in being paid even if they ultimately win. On account of the delay in payment, Plaintiff requests a 0.3 enhancement. Accordingly, based on the risk of taking this case on a contingent fee basis and the delay in payment, Plaintiff requests a nominal multiplier of 0.5.

## G. Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action

Ninth Circuit precedent requires federal District Courts sitting in diversity to "appl[y] state law in determining not only the right to fees, but also in the method

of calculating the fees." (*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478; *see also Collado v. Toyota Motor Sales, U.S.A*, 550 Fed. Appx. 368, 369-70.) As such, when evaluating fee motions based on the Song-Beverly Act, this Court must apply state law. (*Hall v. FCA US LLC* (E.D. Cal. May 21, 2018, No. 1:16-cv-0684 - JLT) 2018 WL 2298431, at *2 ["In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees…."]; *see also Gordillo v. Ford Motor Co.*, (E.D. Cal. June 19, 2014) 2014 WL 2801243, at *1 ["State law establishes the requires showing for attorney's fees in an action in diversity," and "also determines the method of calculating the fees."].)

Under the Song-Beverly Act, a prevailing buyer shall be allowed "to recover a sum equal to the aggregate amount of costs and expenses, *including attorney's fees*," as part of the judgment.   (Civ. Code § 1794(d) [emphasis added].) Additionally, the California Legislature intended the word "expenses" to cover outlays not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative history demonstrates the Legislature exercised its power to permit recovery of a host of litigation expenditures beyond those permitted by Code of Civil Procedure section 1033.5.   (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138.)

Instructively, per the above, numerous California District Courts have held that federal courts sitting in diversity in Song-Beverly Act cases must award costs pursuant to *Jensen,* rather than apply the costs provision in F.R.C.P. Rule 54(d). (*See Zomorodian v. BMW of North America, LLC* (C.D. Cal. 2019) 332 F.R.D. 303, 306 (citing *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003); *Forouzan v. BMW of N. Am., LLC*, 390 F.Supp.3d 1184, 1186-89 (C.D. Cal. 2019).) As stated in the case of *Holcomb v. BMW of North America, LLC*:

> The costs and expenses available to Plaintiffs are not limited by
> Rule 54(d)… The costs and expenses provision in the Song-
> Beverly Act is substantive for the same reasons as the courts

found persuasive in *Base* [*Base v. FCA US LLC*, (N.D. Cal. Jan. 22, 2020), 2020 WL 363006, at *3], *Forouzan*, and *O'Brien* [*O'Brien v. FCA US LLC,* (N.D. Cal. Oct. 18, 2019) 2019 WL 5295066, at *7].

*(Holcomb v. BMW of North America, LLC* (S.D. Cal., Feb. 14, 2020) 2020 WL 759285, at *8; *see also Figures v. FCA US LLC*, (E.D. Cal., Feb. 19, 2020) 2020 WL 820164, at *9.)

Thus, in accordance with *Zomorodian, Forouzan, Base, O'Brien, Figures*, and *Holcomb,* the Court should apply the Ninth Circuit's holding in *Clausen* to the Song-Beverly Act, award all costs and expenses available under Cal. Civ. Code 1794(d), and not limit its award to those allowed under FRCP 54.  In *Clausen*, the Ninth Circuit held that the Oregon Oil Spill Act's costs provision was substantive in nature and affirmed the district court's decision to award costs under Oregon, rather than federal, law. *Id*. at 1064-66. The Oregon statute awarded a prevailing plaintiff "costs of any kind," including expenses like expert witness fees, "as one element of its compensatory damages" recovery. *Id*. at 1064 (emphasis removed). The court reasoned that the Oregon Legislature's decision to craft a statute that included costs and expenses as a part of a prevailing plaintiff's damages was an "express indication" of the Legislature's " 'special interest in providing litigants' with full compensation for reasonable sums expended in pursuit of an Oil Spill Act claim." *Id*. at 1065.  Similarly, the California Legislature has demonstrated a similar "special interest" in permitting prevailing Song-Beverly plaintiffs to recover costs and expenses under section 1794. As the California Court of Appeal has noted: "The Legislature added the "costs and expenses" language to section 1794 in 1978…" *Jensen* at 138.  Clearly, applying *Clausen's* reasoning to the Song-Beverly Act, this Court should award all costs and fees incurred by Plaintiff.

As Plaintiff is the prevailing party, the Song-Beverly Act entitles him to recoup all reasonable attorney's fees, costs and expenses. (Code Civ. Proc. §

1032(a)(4); Civ. Code, § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of California Consumer Attorneys amount to $25,867.50, including drafting this motion and time anticipated to be spent preparing the reply and attending the hearing. (SD Dec., ¶ 9; **<u>EXHIBIT A</u>**.) Plaintiff's counsel also requests a modest 0.5x enhancement, in the amount of $12,933.75 to account for the exceptional result achieve, delay in payment and contingent risk posed by this case.  Lastly, the reimbursable costs and expenses set forth in Plaintiff's billing invoice are $525.55.  (*Id.*)  In total, Plaintiff requests $39,326.80.

$25,867.50 for the legal services provided by California Consumer Attorneys, P.C. (hereinafter "CCA"). Plaintiff also requests a modest "lodestar" enhancement of 0.5x, in the amount of $12,933.75, for a total fee award of $38,801.25.  Plaintiff further moves this Court for reimbursement of verifiable costs and expenses in the amount of $525.55.  The total amount requested by this motion is $39,326.80.

///
///
///
///
///

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

**IV.    CONCLUSION**

      For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's fees, <u>costs and expenses</u> as follows:

| | |
|---|---|
| Lodestar Fees: | $25,867.50 |
| +Lodestar Enhancement: | $12,933.75 |
| Total Fees Requested: | $ |
| +Costs and Expenses: | $     525.55 |
| **=Total Fees and Costs/Expenses:** | **$39,326.80** |

Dated: <u>March 18, 2022</u>            **CALIFORNIA CONSUMER**
                                     **ATTORNEYS, P.C.**


                           By: <u>/s/ Sepehr Daghighian</u>
                               Michael H. Rosenstein, Esq.
                               Sepehr Daghighian, Esq.
                               Brian T. Shippen-Murray, Esq.
                               Attorneys for Plaintiff,
                               KEVIN BODEN